USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/23/09

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------x

SOTHEBY'S, INC.,

                Plaintiff,

      – against –

ROD SHENE, et al.,

                Defendants.

------------------------------------x

04 Civ. 10067 (TPG)

**OPINION**

      This interpleader action was brought by Sotheby's against Rod Shene, the German State of Baden-Württemberg, the Baden-Württemberg Ministry of Science, Research, and the Arts ("the Ministry"), and a German museum known as the Staatsgalerie Stuttgart, for a determination of which of the defendants has title to a 16th-century German book known as the Augsburger Geschlechterbuch. Sotheby's, the Staatsgalerie, and the Ministry have previously been dismissed from the case. Shene and Baden-Württemberg have each filed motions for summary judgment.

      Shene's motion is denied. Baden-Württemberg's motion is granted.

### **Background**

      The book in question is a volume of drawings and etchings created in Germany in the sixteenth century. From at least 1858 to 1945, the

book was stored in the collections of the Staatsgalerie Stuttgart, and was therefore stamped on each page with that institution's insignia.

After World War II, the Staatsgalerie discovered that the book was missing from an offsite facility in Waldenburg, Germany, where the Staatsgalerie had stored certain artifacts to protect them during the war. The book appeared to have been destroyed, along with numerous other artifacts, during fighting and fires that broke out in Waldenburg toward the end of the war. During the events leading to this litigation, however, the parties learned that the book had instead likely been stolen by John Doty, a U.S. Army Captain who was stationed in Waldenburg. Although Doty died prior to this litigation, his nephew states that Doty admitted to having salvaged several artifacts from a fire set by Allied soldiers when they seized the Waldenburg storage facility.

At some time after the war, Baden-Württemberg acquired legal ownership of the Staatsgalerie and its collections.

Shene is a book collector who earns a living, at least in part, by buying and selling used books. In June 2001, he purchased the Augsburger Geschlechterbuch at a private auction held by Sheldon Margulis, a book dealer in St. Louis, Missouri, who had acquired the book from the family of Captain Doty. Shene purchased the book for about $3800.

In March 2004, Shene delivered the book to Sotheby's to be sold at auction. He claims to have been told that he could resell the book for

about $600,000. However, prior to putting the item up for auction, Sotheby's contacted the Staatsgalerie on April 1, 2004, to obtain information about the book's provenance. On April 13, 2004, a Staatsgalerie employee informed Sotheby's that the book had been stolen from its collections in 1945, and that the Staatsgalerie wished to reacquire the book. On July 21, 2004, the German consulate notified Sotheby's that the Staatsgalerie believed that the book had been stolen from the Staatsgalerie in 1945, and that the Staatsgalerie was the legal owner of the book. On August 25, 2004, the Ministry sent a letter to Sotheby's formally informing it that Baden-Württemberg, which now owns the Staatsgalerie and its collections, is the book's owner, and demanding its return.

Shene refused to relinquish the book. Instead, at some point after learning of the German claims to the book, Shene borrowed what he characterizes as a significant amount of money, apparently with the expectation that he would receive considerable compensation for the book. He also filed an action seeking a declaratory judgment that he had title to the book. He voluntarily dismissed that action on December 7, 2004.

On December 20, 2004, Sotheby's brought this interpleader action against Shene, Baden-Württemberg, the Ministry, and the Staatsgalerie, for a determination of which of the defendants has proper title to the book. On March 7, 2005, Baden-Württemberg filed a claim in

interpleader, seeking a declaration that it has title to the book and any damages resulting from Shene's possession of it. Shene filed cross-claims against Baden-Württemberg, seeking a declaratory judgment of ownership and asserting claims of tortious interference with Shene's efforts to sell the book through Sotheby's, breach of Baden-Württemberg's oral agreement not to assert claims to the book, injurious falsehoods based on statements made to Sotheby's, and abuse of process based on Baden-Württemberg's efforts to encourage a criminal prosecution of Shene. In the alternative, Shene asserts a claim of breach of warranty against Margulis, the book dealer who sold him the book.

Sotheby's itself makes no claim to the book and was therefore dismissed from the action. The Staatsgalerie and the Ministry were also dismissed from the action because these entities do not have a legal existence under German law separate from the State of Baden-Württemberg itself. Therefore, the only remaining claims are between Shene and Baden-Württemberg. By consent of the parties and order of the court, Sotheby's has retained custody of the book during this litigation.

In its motion for summary judgment, Baden-Württemberg argues that it satisfies the standards under New York law for replevin and conversion claims. Shene asserts that Baden-Württemberg's claims should fail because they do not meet the requirements for replevin and conversion claims, they conflict with Baden-Württemberg's treaty and

contract obligations, and they are barred by the doctrines of laches, waiver, and unclean hands. Shene also seeks summary judgment on his claims against Baden-Württemberg.

## **The Replevin and Conversion Claims**

A party is entitled to summary judgment if it can demonstrate that there exists no genuine issue of material fact. Fed. R. Civ. P. 56(c). In deciding a motion for summary judgment, a court must view the evidence in the light most favorable to the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 255 (1986).

Conversion occurs when "someone, intentionally and without authority, assumes or exercises control over personal property belonging to someone else, interfering with that person's right of possession." Colavito v. N.Y. Organ Donor Network, Inc., 8 N.Y.3d 43, 49-50 (2006). An action for replevin lies when the true owner of an object demands its return, but the person in possession of it refuses to return it. Solomon R. Guggenheim Found. v. Lubell, 77 N.Y.2d 311, 317-18 (1991). New York law places "the burden of investigating the provenance" of an object on its purchaser, and therefore requires the possessor of an object to prove in a replevin action that the object was not stolen. Id. at 320-21. A good-faith purchaser of a stolen object is not considered to have valid title to the object, because "a purchaser cannot acquire good title from a thief." Kunstsammlungen zu Weimar v. Elicofon, 678 F.2d 1150, 1160 (2d Cir. 1982). Thus, New York law gives greater protection to an object's

true owner than to its good-faith purchaser, because doing otherwise would "encourage illicit trafficking in stolen art." Lubell, 77 N.Y.2d at 320.

Shene does not dispute that he has refused Baden-Württemberg's demand for the return of the book, and that he is therefore interfering with Baden-Württemberg's possession of the book. The question to be determined is thus whether Baden-Württemberg owns the book that was stolen, which would mean that Shene is in possession of a stolen property.

Baden-Württemberg has produced considerable evidence of its ownership. The Augsburger Geschlechterbuch is referenced in an 1858 inventory record of the Staatsgalerie Stuttgart. Each page of the book is stamped with the Staatsgalerie's stamp. An 1862 treatise on engravings noted that the book was contained in the "Etchings Collection at Stuttgart," a reference to the Staatsgalerie. The evidence also demonstrates that the Staatsgalerie transferred numerous objects to the Waldenburg Castle in 1944, and that many of these objects were destroyed by fire during the war. However, there is no evidence that the Staatsgalerie made any voluntary transfer of the book. If this had been done, the usual practice was to place a "deaccession stamp" on the property. No such stamp appears on the book.

As the court has previously found, Baden-Württemberg has demonstrated that the Staatsgalerie no longer has the legal capacity

under German law to own assets, and that Baden-Württemberg now owns the property that was in the name of the Staatsgalerie.

Shene has produced no evidence to controvert these facts. Shene argues that "German" claims to the Staatsgalerie's property were interfered with as power shifted between Germany and the Allied nations after the war. However, he produces no evidence to substantiate or indicate the significance of this vague contention with respect to the precise issues in this case. Thus, even viewed in the light most favorable to Shene, there is no genuine issue of fact as to Baden-Württemberg's ownership of the book.

The evidence produced by Baden-Württemberg also conclusively demonstrates that Captain Doty stole the book while stationed with the U.S. Army in Waldenburg, where the book was stored toward the end of the war. Government records establish that Doty's unit was stationed in Waldenburg during the relevant time period. Doty admitted to members of his family that a common practice of Allied soldiers was to burn books and other objects stored in castles, such as the one where the Augsburger Geschlechterbuch was stored. He also admitted that during one of these fires, he "rescued" some books. Although Doty's motives may have been admirable, this evidence nonetheless establishes that he took the book without the permission of the German owner. Shene has failed to produce any evidence to the contrary.

Since it is conclusively shown that Baden-Württemberg owned the book at the time that Doty stole it, and since Doty could not pass valid title of the book to Shene, Baden-Württemberg is the legal owner of the book and is entitled to summary judgment on its claims.

### The Limitations Period and Laches

Shene contends that even if Baden-Württemberg would prevail on its claims to ownership, the action is untimely either under a German statute of limitations or the equitable doctrine of laches.

Shene first argues that this action is untimely under German law. However, he offers no support for his contention that German law should apply here. Federal courts sitting in diversity apply the choice-of-law analysis of the forum state. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487 (1941). New York's choice-of-law rules dictate that its statute of limitations applies to actions brought in New York. Martin v. Julius Dierck Equip. Co., 43 N.Y.2d 583, 588 (1978). Thus, the limitations period provided by New York law, not German law, applies to this action.

New York imposes a three-year limitations period on actions for replevin of stolen goods. CPLR § 214. This period begins "when the true owner makes demand for return of the chattel and the person in possession of the chattel refuses to return it." Lubell, 77 N.Y.2d at 317-18. The same rule applies even if a stolen item was acquired, and is now possessed, by a good-faith purchaser for value. Id. This cause of action accrued on August 25, 2004, when Baden-Württemberg demanded the

return of the book.  Baden-Württemberg's claim to the book in this action, which was made by March 7, 2005, was therefore timely.

Shene does not seriously dispute that the action is timely under New York's statute of limitations.  However, he contends that the action is nonetheless barred by laches.  This requires Shene to prove that Baden-Württemberg knew that Shene possessed the book but inexcusably delayed taking action against Shene, and that Shene is prejudiced by Baden-Württemberg's assertion of its rights.  See Tri-Star Pictures, Inc. v. Leisure Time Prods., B.V., 17 F.3d 38, 44 (2d Cir. 1994); Hoelzer v. City of Stamford, 933 F.2d 1131, 1137-38 (2d Cir. 1991).  In particular, the court must consider whether Baden-Württemberg exercised "reasonable diligence" to locate the book after its disappearance.  Lubell, 77 N.Y.2d at 321.

There is no basis for finding laches in this case.  Baden-Württemberg did wait nearly sixty years after the book's disappearance to begin pursuing a claim for it.  However, it was only in 2004 that Baden-Württemberg even learned that the book still existed.  Until then, it reasonably believed that the book, like many other artifacts with which it was stored, had been destroyed in a fire.  Baden-Württemberg has demonstrated that it diligently pursued claims for other objects that it believed had been stolen, rather than destroyed, and there was no reason for it to be any less diligent in attempting to recover the book here.  Indeed, even if Baden-Württemberg had publicly announced that the

book had been stolen, it is highly unlikely that it would have been able to recover it meaningfully sooner, since the book apparently spent decades sitting on Doty's bookshelf at home. When the book was ultimately sold by Captain Doty's family to Margulis, and by Margulis to Shene, this was done in private transactions which the German owner could not have learned about. Once the Staatsgalerie and Baden-Württemberg finally learned of the book's existence in 2004, as a result of contacts from Sotheby's, they moved swiftly and diligently to assert a claim to the book.

Nor is there any cognizable prejudice to Shene resulting from Baden-Württemberg's assertion of its claim now. Shene purchased the book even though every page of it was stamped with a page bearing the Staatsgalerie's name, and apparently failed to fully investigate the book's provenance. Shene insists that he is prejudiced because he borrowed a substantial amount of money with the expectation that the book would be sold for hundreds of thousands of dollars. However, he appears to have borrowed money despite being aware that Baden-Württemberg was asserting a claim to the book. There is thus no basis for recognizing a defense of laches in this case.

### Shene's Other Arguments

Shene's remaining arguments are also without merit.

First, Shene contends that a treaty between Germany and the Allied nations bars this action because it precludes claims by "German

nationals" against U.S. nationals "arising out of actions taken or authorized by" the U.S. Government. See Convention on the Settlement of Matters Arising Out of the War and the Occupation, May 26, 1952, ch. 9 art. 1. However, there is no indication that Captain Doty removed the book pursuant to U.S. Government authorization.

Second, Shene contends that Baden-Württemberg officials entered into an oral contract with him not to claim ownership of the book. Alternatively, he argues that Baden-Württemberg waived its claim in this litigation by initially attempting to negotiate with Shene before this case was filed. However, he has produced no evidence that a contract existed or that a waiver occurred. The only support that he offers for this claim is correspondence from Staatsgalerie officials indicating that the Staatsgalerie may attempt to negotiate with Shene or purchase the book. This correspondence does not state, and cannot be read to mean, that the Staatsgalerie went so far as to actually waive its rights of ownership. There is thus no basis for finding that a contract existed or that a waiver occurred.

Third, Shene asserts claims in tort and a defense of unclean hands based on Baden-Württemberg's communications with both Shene and

criminal authorities. These claims appear to refer to one or two telephone calls made by German consular officials to Shene, and to an October 2004 letter from the German consulate to the Department of Homeland Security requesting its intervention in this matter. However, there is no evidence that Baden-Württemberg or German officials acted improperly, or made false statements, when they contacted Shene to negotiate the recovery of the book. With regard to the October 2004 letter to the Department of Homeland Security, the letter appears to have been accurate in all material respects, and it was entirely appropriate for German officials to seek the aid of criminal authorities in recovering what they reasonably believed to be stolen property.

## Conclusion

Baden-Württemberg's motion for summary judgment is granted in all respects. Shene's motion for summary judgment is denied in all respects. The parties are directed to submit a proposed judgment to the court.

SO ORDERED.

Dated: New York, New York
March 23, 2009

_____
Thomas P. Griesa
U.S.D.J.